UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

PT-1 COMMUNICATIONS, INC.;                    Case No.01-12655-CEC
PT-1 LONG DISTANCE, INC.; and                      01-12658-CEC
PT-1 TECHNOLOGIES, INC.,                            01-12660-CEC

                        Debtors.               Chapter 11


------------------------------------------------------------x

<u>DECISION</u>


Appearances:


Laurence May, Esq.                       Thomas P. Cole, Esq.
Cole, Schotz, Meisel, Forman & Leonard,  P.A.    United States Department of Justice
460 Park Avenue                          Tax Division
New York, New York 10022                 P.O. Box 55
Attorney for Edward P. Bond, Liquidating Ben Franklin Station
Trustee of the Liquidating Trust U/A/W PT-1   Washington, D.C. 20044
Communications, Inc., PT-1 Long Distance,
Inc., and PT-1 Technologies, Inc.








                    CARLA E. CRAIG
                United States Bankruptcy Judge

This matter comes before the Court on the motion of the Liquidating Trustee (the "Trustee") of the Liquidating Trust U/A/W PT-1 Communications, Inc., PT-1 Long Distance, Inc., and PT-1 Technologies, Inc. ("Liquidating Trust") for summary judgment expunging the proof of claim of the Internal Revenue Service ("IRS").  The IRS's proof of claim seeks taxes, interest and penalties for the period March 9, 2001 through December 31, 2001, in the aggregate amount of $1,051,126.50 and for the tax year ending December 31, 2002 ( the "2002 tax year") in the aggregate amount of $7,863,701.84.

This decision addresses only the portion of the IRS's proof of claim seeking taxes, interest and penalties for the 2002 tax year.  For the reasons set forth below, the Trustee's motion for summary judgment seeking to expunge the IRS's proof of claim is granted as it relates to the 2002 tax year.  With respect to the remainder of the Trustee's motion for summary judgment, relating to the IRS's proof of claim for the period March 9, 2001 through December 31, 2001, and seeking summary judgment on certain counterclaims, decision is reserved.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 11 U.S.C. §§ 1334(b) and 157(b)(2)(B) and (C) and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

### Facts

These bankruptcy cases were commenced by the filing of voluntary petitions for relief under Chapter 11 on March 9, 2001.  No chapter 11 trustee was ever appointed.  PT-1 Communications, Inc., PT-1 Long Distance, Inc., and PT-1 Technologies, Inc., as debtors and

debtors in possession (the "debtors") continued in possession of their assets and in the

management of their businesses until the debtors' Second Amended Joint Plan of Reorganization

dated as of August 31, 2004 ("Plan") was confirmed on November 23, 2004.  At that time, as

provided in Article 5 of the Plan, certain of the debtors' assets were transferred to the Liquidating

Trust to be distributed in accordance with the Plan, and certain of the debtors' rights and powers

were also transferred to the Liquidating Trust.

On September 15, 2003, PT-1 Communications, Inc. and its subsidiaries

(collectively, "PT-1") filed a tax return for the 2002 tax year (the "2002 return").  The 2002 return

was filed at the IRS's Ogden Submission Processing Center in Ogden, Utah.  Along with the

2002 return, PT-1 filed a request for determination of its federal tax liability for the 2002 tax year

pursuant to § 505(b) of the Bankruptcy Code (the "505(b) request").  A copy of the 2002 return

and the 505(b) request was also sent to the IRS special insolvency unit located in Manhattan.

The IRS did not notify PT-1 that the 2002 return had been selected for

examination within the 60-day period prescribed by § 505(b).  Instead, it filed its proof of claim

in February, 2004, two and a half months after the expiration of the period, notifying PT-1 for the

first time of its claim that taxes are due for the 2002 tax year.  The IRS's proof of claim has been

amended from time to time, most recently on August 1, 2006 (this proof of claim, together with

all previously filed IRS proofs of claim and all amendments thereo, the "Proof of Claim").

<u>Applicable Bankruptcy Law</u>

The Bankruptcy Code provides a mechanism for a trustee, or debtor in possession,

to obtain a prompt determination of post-petition tax liability.  Section 505(b) states, in relevant

part,

3

A trustee may request a determination of any unpaid liability of the
estate for any tax incurred during the administration of the case by
submitting a tax return for such tax and a request for such a
determination to the governmental unit charged with responsibility
for collection or determination of such tax.  Unless such return is
fraudulent, or contains a material misrepresentation, the trustee, the
debtor, and any successor to the debtor are discharged from any
liability for such tax–

(1)     upon payment of the tax shown on such return, if--

(A) such governmental unit does not notify the
trustee, within 60 days after such request, that such
return has been selected for examination; or

(B) such governmental unit does not complete such
an examination and notify the trustee of any tax due,
within 180 days after such request or within such
additional time as the court, for cause permits . . . .

11 U.S.C. § 505(b).  Section 505(b), like the other sections of Chapter 5 of the Bankruptcy Code,

applies in Chapter 11 cases.  11 U.S.C. § 103(a).  Although § 505(b) provides for a trustee to

make a 505(b) request, the authority to make such a request in a chapter 11 case, where a trustee

has not been appointed, belongs to the debtor in possession.  See 11 U.S.C. § 1107(a) ("Subject

to any limitations on a trustee serving in a case under this chapter, and to such limitations or

conditions as the court prescribes, a debtor in possession shall have all the rights . . . and powers,

and shall perform all the functions and duties . . . of a trustee serving in a case under this

chapter."(emphasis added)).  Also relevant to this motion is § 1101(1) of the Bankruptcy Code,

which provides that, except where a chapter 11 trustee has qualified and is serving in the case,

the term "debtor in possession" means the debtor.

4

<u>The IRS's Arguments</u>

The IRS does not dispute that § 505(b), if applicable, would prevent it from collecting any additional taxes from PT-1 for the 2002 tax year.  Instead, it claims that § 505(b) is inapplicable in this case for two reasons.

First, the IRS claims that no proper request for determination of PT-1's 2002 tax liability, effective to trigger the statutory 60-day period, was ever made, because the 505(b) request was submitted to the IRS's Ogden Submission Processing Center along with the 2002 return.  According to the IRS, the 505(b) request, in order to be effective, should have been sent to the Office of the District Director for the district in which this case is pending, notwithstanding the fact that the position of District Director had been abolished at some point prior to the commencement of this bankruptcy case, and well before the 505(b) request was made.  Alternatively, the IRS argues that service of the 505(b) request should have been made in accordance with the provisions of this Court's local rule, E.D.N.Y. LBR 2002-2.  For reasons that will be explained below, these arguments are without merit.

Equally lacking in merit is the IRS's substantive argument against the applicability of § 505(b).  According to the IRS, although § 505(b) discharges the trustee, the debtor, and any successor to the debtor, it does not discharge the estate, and therefore the Liquidating Trust remains liable for the obligation.  This argument is based upon flawed case law and upon a misunderstanding of the applicability of those cases in the context of chapter 11 and on the particular facts of this case.

<u>PT-1's Method of Making the 505(b) Request Was Sufficient</u>

PT-1 attached its 505(b) request, entitled "Request for prompt assessment under section 505(b) of the Bankruptcy Code", to the cover page of its 2002 return, and sent the return and the request to the IRS's Ogden Submission Processing Center.  There is no question that this was the appropriate place to file the 2002 return.

It appears from the language of § 505(b) that this was sufficient to invoke its provisions.  Section 505(b) states that "a trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case <u>by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax</u>" 11 U.S.C. § 505(b)(emphasis added).  The most reasonable interpretation of this statutory language is that the request for a 505(b) determination is to be submitted with the tax return.  Certainly this conclusion is appropriate where no other current address for filing a 505(b) request is provided by the IRS.  Accordingly, the 505(b) request was properly made in accordance with the statute.

PT-1's 505(b) request was also made in accordance with IRS directives in effect at the time.  In 1981, the IRS published Revenue Procedure 81-17, which directed that requests for prompt determination of tax liability under § 505(b) be filed with the District Director for the district in which the case is pending.  Rev. Proc. 81-17, 1981-1 C.B. 688, 1981-20 I.R.B. 48, 1981 WL 164968.  However, the position of District Director was abolished prior to the commencement of this case, and in April, 2003, the IRS published Notice 2003-19, entitled "Place For Filing Certain Elections, Statements, Returns and Other Documents".  Notice 2003-

19, 2003-1 C.B. 703, 2003-14 I.R.B. 703, 2003 WL 1252523.  The introductory paragraph of this

notice states:

> This notice advises taxpayers of the proper address for filing
> certain elections, statements, and other documents with the Service
> as a result of the reorganization, including with respect to offices or
> officials that no longer exist as part of the reorganization.

Id.  Although Notice 2003-19 does not expressly refer to 505(b) requests, it does specify the

location for filing corporate tax returns.  Id.  Given that the stated purpose of the Notice is to

"advise taxpayers of the proper address for filing certain elections, statements or other

documents. . . including with respect to offices or officials that no longer exist. . . ," id., and

given that the 505(b) request is a request for expedited review of a tax return, it is certainly

reasonable to conclude, as PT-1 did, that the 505(b) request should be submitted with the tax

return.

   Certainly it is more reasonable and better calculated to provide notice to the IRS

to submit the request with the return than to send it to the office of an official who no longer

exists.  This, however, is what the IRS contends should have been done.  The disingenuousness

of the IRS's position that the 505(b) request was not properly made is apparent from the absurdity

of this argument.  The following exchange took place at the argument of this motion between the

Court and the attorney representing the IRS:

> THE COURT:  So if they sent [it to] IRS District Director,
> Brooklyn, New York, and put it in the mail,
> and then it comes back to them because
> there's no address on it because there is no
> District Director so there's no address to
> send it to, and they get it returned
> undeliverable, they put it in their files, that's
> better notice than – that would comply, but

|                | sending it to the Ogden Processing Center where they're actually filing their return is not – |
|----------------|---|
| MR. COLE:      | Well – |
| THE COURT:     | – is not suitable? |
| MR. COLE:      | – that – these are hypotheticals you're asking me to answer, your Honor, so it's tough to really say. |

Tr.[1] at 59.

Alternatively, the IRS argues that the 505(b) request should have been served on the IRS in accordance with E.D.N.Y. LBR. 2002-2, which provided that "[e]xcept as otherwise requested by it, any notices required to be given to the IRS shall be sent to each of. . ." three addresses specified in the rule.  See E.D.N.Y. LBR 2002-2.  However, this rule does not apply where the IRS has "otherwise requested" that notice be sent to another address, as it did in promulgating Revenue Procedure 81-17.  The fact that the IRS subsequently abolished the position of District Director (although without withdrawing Revenue Procedure 81-17) did not revive the applicability of the local rule; it simply required taxpayers to look for guidance in other IRS publications (as PT-1 did).  See Def.'s Mem. In Opp'n to Mot. For Summ. J. at 8 (noting that Rev. Proc. 81-17 was in effect at the time PT-1 made its 505(b) request).  Moreover, local bankruptcy rules cannot and are not intended to supersede the provisions of the Bankruptcy Code, which, as outlined above, direct that a 505(b) request be made with the tax return.

In sum, PT-1's 505(b) request was made in accordance with the statute and with the applicable IRS directive.  The IRS cannot insulate itself from the effect of § 505(b) by hiding

---

[1]"Tr." refers to the transcript of the hearing held on October 11, 2006.

behind outdated and unclear procedural directives which would make it effectively impossible to make a 505(b) request that the IRS would recognize as valid.

<u>Section 505(b) Applies in this Chapter 11 Case to Discharge PT-1's 2002 Tax Liability</u>

PT-1, acting as debtor and debtor in possession, made a request for prompt determination of tax liability pursuant to § 505(b). When the IRS failed to respond within the 60-day statutory period, PT-1, debtor and debtor in possession, was discharged from any further tax liability for the 2002 tax year. This result follows from the language of the statute, which provides that, in the absence of fraud or misrepresentation, "the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax." 11 U.S.C. § 505(b). The conclusion that this statutory discharge of tax liability applies to PT-1, as debtor and debtor in possession, flows from the provisions of § 1102(a), which gives a debtor in possession "all the rights . . . and powers . . . of a trustee." <u>See</u> 11 U.S.C. § 1102(a). This conclusion also follows from § 1101(1), which provides that in a case where no trustee has been appointed, the term debtor in possession means debtor. <u>See</u> 11 U.S.C. § 1101(1).

Therefore, in November 2003, when the 60-day statutory period under § 505(b) expired, PT-1, debtor and debtor in possession, was discharged of tax liability for the 2002 tax year. After the discharge became effective, PT-1 continued in possession of its assets and in the management of its business as debtor in possession until the confirmation of the Plan, on November 23, 2004. Pursuant to the terms of the Plan, PT-1 was discharged from liability, and the Liquidating Trust was created, to collect certain assets and make distributions to creditors in accordance with the Plan. The Liquidating Trust is clearly a successor to the debtor and debtor in possession; it has succeeded to certain of the assets, powers and liabilities of the debtor and

debtor in possession pursuant to the terms of the Plan.  See Plan, Article 5.  Therefore, pursuant to the provisions of § 505(b), the discharge received by the debtor and debtor in possession in November 2003 applies to the Liquidating Trust.

This conclusion is compelled by an analysis of the relationships between the IRS, PT-1 and the Liquidating Trust, as well as by the language of the statute.  PT-1 is the taxpayer.  Any liability that the Liquidating Trust could have for PT-1's tax obligations would be by virtue of the Plan, and would be derivative of PT-1's tax liability.  If PT-1 had no tax liability for 2002 at the time the Plan was confirmed, because of the § 505(b) discharge, no such tax liability could pass to the Liquidating Trust.

The IRS argues that, even if § 505(b) discharged the tax liability of the trustee, the debtor, or any successor to the debtor, the claimed 2002 tax liability can still be collected from the "estate," which the IRS apparently believes to be the same thing as the Liquidating Trust.  This argument is based upon four cases, all arising in chapter 7, in which the courts held that § 505(b), although providing a discharge to the trustee and the debtor, did not discharge the estate.  See Kellogg v. United States (In re West Texas Marketing Corp.), 54 F.3d 1194 (5th Cir. 1995); In re Goodrich, 215 B.R. 638 (Bankr. D. Mass. 1997); In re Fondiller, 125 B.R. 805 (N.D. Cal. 1991); In re Rode, 119 B.R. 697 (Bankr. E.D. Mo. 1990).  In each of these cases the court pointed to the fact that § 505(b) did not expressly include "estate" in the category of discharged entities, and concluded that the estate is not a successor in interest to the debtor.  However, in none of these cases did the court consider the impact of § 558 of the Bankruptcy Code, which provides that "[t]he estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation . . . ."  11 U.S.C. § 558.  By

operation of § 558, therefore, the estate is entitled to the benefit of the limitations period created by § 505(b).  This Court respectfully finds that these cases were incorrectly decided, and declines to follow them.

        Furthermore, whether or not these cases were correctly decided in the context of chapter 7, they have no application to this case.  In a chapter 7 case, the debtor has an existence separate from the estate, which is comprised of all of the property identified in § 541 of the Bankruptcy Code and which is administered by the trustee.  In chapter 11, however, from an economic standpoint, there is no estate separate from the debtor in possession.  In any event, in this case the Liquidating Trust, from which the IRS seeks to collect the taxes in question, is clearly a successor to the debtor and debtor in possession.

        In any event, in 2005, Congress effectively overruled the cases relied upon by the IRS, by amending § 505(b) to include "estate" among the entities receiving a discharge of tax liability.  The revision of § 505(b) in the 2005 amendments to the Bankruptcy Code resulted from a recommendation of the National Bankruptcy Review Commission.  Rather than altering the meaning of § 505(b), the revision was intended to reinforce the "internal logic" of the section, by which "the estate should be included in the provision providing for the discharge of tax liabilities."  See Jack F. Williams, National Bankruptcy Review Commission Tax Recommendations: Notice, Jurisdiction and Corporate Debtors, 14 Emory Bankr. Dev. J. 261, 286 (1998) (the "Williams Article").  The National Bankruptcy Review Commission suggested a change to § 505(b) to make it clear that the limitations period provided in that section was also intended to cover bankruptcy estates.  The recommendation was directly in response to the decisions relied upon by the IRS.  According to the Commission, until 1990, when Rode was

decided, tax practitioners worked under the assumption that § 505(b) applied to an estate since it applied to a trustee who was responsible for administering the assets of an estate.  Williams Article at 286.

The Williams Article went on to note that it made little sense to discharge a trustee but not an estate from administrative tax liabilities.  "Discharging the trustee from any tax liability, but not discharging the estate, provides little assistance to the trustee who is attempting to administer the estate."  Id. at 286.  In suggesting the change to § 505(b) and rejecting the holding of Rode, the Commission, according to Professor Williams, noted that the "proposal is consistent with congressional intent for providing for expedited audits and speedy, final determination of tax liabilities in bankruptcy."  Id. at 286.  Congress, therefore, enacted the Commissions's recommendation, legislatively overruling Rode and its progeny.

<u>Conclusion</u>

For all of the foregoing reasons, the IRS's Proof of Claim, to the extent that it relates to the 2002 tax year, is expunged.  A separate order is being entered herewith.

Dated: Brooklyn, New York
        December 7, 2006

\s\*Carla E. Craig*
                CARLA E. CRAIG
          United States Bankruptcy Judge
