UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

PT-1 COMMUNICATIONS, INC.;                     Case Nos. 01-12655-CEC
PT-1 LONG DISTANCE, INC.; and                              01-12658-CEC
PT-1 TECHNOLOGIES, INC.,                                   01-12660-CEC

                       Debtors.                      Chapter 11

-------------------------------------------------------------x

## DECISION

Appearances:

| | |
|---|---|
| Laurence May, Esq. | Thomas P. Cole, Esq. |
| Cole, Schotz, Meisel, Forman & Leonard, P.A. | United States Department of Justice |
| 460 Park Avenue | Tax Division |
| New York, New York 10022 | P.O. Box 55 |
| Attorney for Edward P. Bond, Liquidating | Ben Franklin Station |
| Trustee of the Liquidating Trust U/A/W PT-1 | Washington, D.C. 20044 |
| Communications, Inc., PT-1 Long Distance, | Attorney for the Internal Revenue Service |
| Inc., and PT-1 Technologies, Inc. | |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of the Liquidating Trustee (the "Trustee") of the Liquidating Trust U/A/W PT-1 Communications, Inc., PT-1 Long Distance, Inc., and PT-1 Technologies, Inc. for summary judgment expunging the request for administrative payment of the Internal Revenue Service ("IRS"). The IRS's current request seeks taxes, interest and penalties for the period of March 9, 2001 through December 31, 2001 (the "Short Period") and for the tax year ending December 31, 2002 (the "2002 tax year"). The Trustee also seeks summary judgment on his counterclaim for declaratory relief authorizing PT-1 to file a tax return for the period of January 1, 2001- March 8, 2001 (the "Stub Period") and seeking various tax refunds.

This decision addresses the Trustee's objection to the IRS's request for the Short Period and his counterclaims for declaratory relief and tax refunds. This Court previously granted the Trustee's motion regarding the portion of the IRS's request relating to the 2002 tax year. For the reasons set forth below, the Trustee's motion for summary judgment is granted in part and denied in part.

Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 1142, and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052.

Facts

The following facts are not in dispute.

In February 1999, a merger took place whereby the shareholders of PT-1 Communications, Inc. (collectively with its subsidiaries, "PT-1" or the "debtors") sold their common stock to STAR Telecommunications ("STAR"), making PT-1 a wholly owned subsidiary of STAR. Affidavit of Laurence May in Supp. of Mot. For Summ. J. ("May Affidavit") ¶ 12. PT-1 was consolidated with STAR and other affiliated corporations for tax reporting purposes and could not file any tax returns on its own behalf. Id.

STAR was indebted to WorldCom Communications Corp. ("WorldCom"). Id. ¶ 15. PT-1 guaranteed STAR's obligations, which was secured by certain of PT-1's assets. Id. STAR also pledged its stock interest in PT-1 to WorldCom and granted WorldCom the right to vote STAR's shares in PT-1 to elect a new board of directors in the event STAR defaults on its obligations. Id. STAR defaulted on its obligations and WorldCom exercised its right to vote STAR's PT-1 shares to elect a new board of directors, but the shares were not transferred from STAR to WorldCom. Id. ¶ 16.

On March 9, 2001, immediately after PT-1's new board was elected, these bankruptcy cases were commenced by the filing of voluntary petitions for relief under Chapter 11. Tr.[1] at 20. No chapter 11 trustee was ever appointed. PT-1, as debtors and debtors in possession, continued in possession of their assets and in the management of their businesses until the debtors' Second Amended Joint Plan of Reorganization dated as of August 31, 2004 ("Plan") was confirmed on November 23, 2004. At that time, as provided in Article 5 of the Plan, certain

---

[1] "Tr." refers to the transcript of the hearing held on October 11, 2006.

of the debtors' assets were transferred to the Liquidating Trust to be distributed in accordance with the Plan, and certain of the debtors' rights and powers were also transferred to the Liquidating Trust.

On or about March 15, 2002, STAR filed a request with the IRS for an extension of time to file a consolidated federal tax return for itself and its subsidiaries, including PT-1.  See May Affidavit ¶ 19, Exhibit B.  Pursuant to the extension, the tax return for the group was due by September 16, 2002.  PT-1 concluded that it would not have any tax liability for 2001 because, although PT-1 had taxable income, the substantial losses of STAR and other subsidiaries would offset PT-1's taxable income.  Id.  ¶ 20.  However, a few days before the consolidated tax return was due, STAR informed PT-1 that PT-1 would not be included in the consolidated tax return.  Id. ¶ 21.  STAR's purported reason for refusing to include PT-1 in its consolidated return was that it did not control PT-1, even though STAR owned PT-1's shares.  Id.  STAR contended that WorldCom should include PT-1 on its tax return because WorldCom had controlled PT-1 ever since PT-1's new board of directors was elected.  Id.; Tr. at 22.  However, WorldCom took the position that PT-1 belonged on STAR's consolidated tax return.  Id. at 23.  With both companies refusing to include PT-1 on their respective consolidated tax returns, PT-1 filed its own tax return for the Short Period, paying approximately $6.7 million in taxes and $200,000.00 in interest.  May Affidavit ¶ 23.  Subsequently, STAR filed for bankruptcy, never filed a consolidated tax return for 2001, and was liquidated.  Obj. to Proof of Claim ¶ 16.

On February 6, 2004, the IRS filed a request for an administrative expense payment seeking $2,064.860.08 in penalties and interest for the Short Period.  On August 13, 2004, the IRS filed an amended request for $9,254,525.00, representing interest and penalties for the Short

4

Period.  On March 14, 2005, the Trustee filed a motion to expunge the IRS's request for an administrative expense payment.  The Trustee also sought a declaration that PT-1 was permitted to file a tax return for the Stub Period and carry forward and carry back net operating losses against the taxable income for the Short Period, in addition to the following monetary relief: (1) an income tax refund in the amount of $1.4 million for taxes paid for the tax year ending June 30, 1998, plus interest; (2) damages in the full amount of the taxes paid in September 2002, plus interest; and (3) damages in the full amount of the tax refund allegedly due PT-1 for the tax year ending 2002, plus interest.

On March 18, 2005, the IRS filed another amended request seeking, in part, the amount of $453,125.00 for taxes for the Short Period, with $113,281.25 in penalties and $76,892.74 in interest thereon, and an additional request for $168,971.06 for penalties for the Short Period and $609,652.00 in interest thereon.  On August 1, 2006, the IRS filed yet another amended request seeking, in part, taxes for the Short Period, with interest but no penalties, totaling $581,040.00, relating to the IRS's disallowance of loss carry-forwards from the STAR consolidated tax return for the year 2000, and penalties of $260,297.25 for PT-1's failure to timely pay its taxes and failure to pay estimated taxes for the Short Period, with $209,789.29 in interest thereon.  See Mem. In Opp. To Mot. For Summ. J. ¶¶ 10,11.  The IRS's request does not contain a breakdown showing how much of the penalties and interest request is for PT-1's failure to timely pay taxes and how much is for PT-1's failure to pay estimated taxes.  Tr. at 49.  The IRS waived its previous request for penalties for PT-1's failure to timely file a tax return.  That same day, the Trustee filed his motion for summary judgment.

5

Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue of material fact to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." Id. at 248. No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citation omitted). On the other hand, if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) (citation omitted). "The non-moving party must show that there is more than a metaphysical doubt regarding the material fact and my not rely solely on self-serving conclusory statements." In re Jarrell, 251 B.R. 448, 450-451 (Bankr. S.D.N.Y. 2000).

Discussion

I.  Objection to Claim

   A.  Burden of Proof

The Trustee argues that the IRS bears the burden to prove its entitlement to the administrative expense claims. The IRS argues that its request for administrative payment is

6

prima facie evidence of the validity of the request's amount and therefore, the Trustee bears the burden of proof.

Section 503(b) of the Bankruptcy Code provides that "after notice and a hearing" taxes incurred by the estate are "allowed" as administrative expenses. 11 U.S.C. § 503(b). Since "grants of administrative expense priority cut against the general goal in bankruptcy law to distribute limited debtor assets equally among similarly situated creditors," it has been held that "the party seeking administrative expense status bears the burden of establishing its entitlement to that status." In re Adelphia Bus. Solutions, Inc., 296 B.R. 656, 662 (Bankr. S.D.N.Y. 2003). Although bankruptcy Rule 3001(f) provides that a filed proof of claim constitutes prima facie evidence of the validity and amount of the claim, courts have held that requests for administrative expense payment are not given the same evidentiary weight as proofs of claim. Fed. R. Bankr. P. 3001(f); See, e.g., In re Silvus, 329 B.R. 193, 205 (Bankr. E.D. Va. 2005); In re Morgan, 48 B.R. 148, 149 (Bankr. D. Md. 1985); See also 4 Collier on Bankruptcy ¶ 503.02[2] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev.) ("The 'notice and hearing' requirement for allowance of administrative expenses is in contrast to the 'deemed' allowance provision of section 502(a) respecting proofs of claim. The phrase 'after notice and a hearing' . . . contemplates at least some form of court approval before allowance of any administrative payment from the estate . . . .").

Here, the burden of proof is not an issue because the material facts underlying the issues are undisputed and only questions of law remain.

B.  Penalties for Failing to Timely File and Timely Pay

The Trustee argues that the penalties and interest relating to PT-1's failure to timely file a tax return and to timely pay taxes should be expunged because the failure was due to reasonable cause and not willful neglect. The IRS contends that PT-1's objection to the late filing penalty is moot because its most current request for payment of administrative expenses does not include a late filing penalty. The IRS further contends that, even though the extension request rendered the late filing penalty improper, it does not excuse PT-1's failure to timely pay its taxes.

Pursuant to title 26 of the United States Code (the "Internal Revenue Code"), a corporation is required to timely pay its taxes. 26 U.S.C. § 11. An affiliated group of corporations, such as a parent corporation and its subsidiaries, "shall have the privilege of making a consolidated return . . . in lieu of separate returns." 26 U.S.C. § 1501. If the affiliated corporations choose to become a consolidated group, they "are treated as a single entity for income tax purposes as if they were, in fact, one corporation." Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines Inc.), 928 F.2d. 565, 569 (2d Cir. 1991) (quoting Exxon Corp. v. United States, 785 F.2d 277, 280 (Fed. Cir. 1986)).

If affiliated corporations file a consolidated return, then, pursuant to Treasury Regulation § 1.1502-77A, the parent corporation "shall be the sole agent for each subsidiary in the group . . . in all matters relating to the tax liability for the consolidated return year . . . [and] no subsidiary shall have authority to act for or to represent itself in any such matter." 26 C.F.R. § 1.1502-77A. Therefore, an individual member of a consolidated group is not authorized to file its own tax return or to pay its own tax liability. Furthermore, penalties will be imposed if the consolidated tax return is not timely filed (determined with regard to any extension of time to file) or if the

group's liability is not timely paid. 26 U.S.C. § 6651(a); Mendes v. Comm'r, 121 T.C. 308, 320 (T.C. 2003). However, penalties will not be imposed if the failure to timely file a tax return or to timely pay taxes was due to reasonable cause and not due to willful neglect. 26 U.S.C. § 6651(a). "Caselaw and legislative history indicate that the primary purpose of these penalties is to ensure compliance." In re Slater Corp., 190 B.R. 695, 699 (Bankr. S.D. Fla. 1995) (citing U.S. v. Boyle, 469 U.S. 241, 245, 105 S. Ct. 687, 689, 83 L. Ed. 2d. 622 (1985)).

The terms "reasonable cause" and "willful neglect" are not defined by the Internal Revenue Code. Courts have interpreted reasonable cause to mean that the taxpayer exercised ordinary business care and prudence, but was unable to file the return or pay the taxes on time. See Id. at 246; In re Hudson Oil Co., 91 B.R. 932, 948 (Bankr. D. Kan. 1988); See also 26 C.F.R. § 301.6651-1. In the failure to timely pay context, some courts have also considered whether a taxpayer, using ordinary business care and prudence, would suffer an undue hardship if the tax was paid on its due date. See Slater, 190 B.R. at 699. A court must take into account "all of the facts and circumstances of a taxpayer's financial circumstances" to determine whether a taxpayer exercised ordinary business care and prudence. Merriam v. Comm'r, 70 T.C.M. (CCH) 627, 1995 WL 522813, at *13 (T.C. 1995). Courts have interpreted willful neglect as a taxpayer's conscious, intentional failure or reckless indifference to timely file or timely pay. Slater, 190 B.R. at 699; Hudson Oil, 91 B.R. at 948.

The IRS's current administrative expense payment request waived the penalty for PT-1's late filing because it acknowledged that the extension request filed by STAR included PT-1. Tr. at 46-47. Therefore, the question whether reasonable cause existed for PT-1 to file its tax return

9

late is moot. However, the IRS continues to request penalties, with interest thereon, for PT-1's failure to timely pay its taxes. The Trustee's motion to expunge this penalty request is granted.

The material facts are undisputed. PT-1 was a wholly owned subsidiary of STAR and was part of a consolidated tax group. STAR, as the common parent of the consolidated group, was charged with the duty of ensuring that the group's liability was timely paid. PT-1 concluded that it would not have to pay its own taxes because it was included in STAR's extension request and had been included in STAR's consolidated tax return in the past. The IRS argued that, considering the events that occurred in 2001 (such as WorldCom electing a new board for PT-1 and STAR's bankruptcy filing), PT-1 should have thought about its liability independently. Id. at 51-52. However, the undisputed facts show that PT-1 independently examined its tax liability and concluded that there would be none. It should be noted that STAR included PT-1 on its extension request, indicating that PT-1 was part of their consolidated group, after WorldCom placed a new board of directors in control of PT-1, and that STAR filed for bankruptcy after PT-1 filed its own return. Therefore, the IRS's contention that PT-1 should have anticipated that it would be expelled from the group because of those events is without merit. PT-1 clearly exercised ordinary business care and prudence by relying on STAR's extension request and by concluding that it would have no independent tax liability. Furthermore, by operation of Treasury Regulation § 1.1502-77A, PT-1, as a member of the consolidated group, was unauthorized to take any independent action relating to tax liability for the 2001 year. Therefore, it is clear from the undisputed facts that the standard of reasonable cause is satisfied and that PT-1 did not willfully neglect to pay its taxes. Therefore, the Trustee's motion to expunge the IRS's penalty request for PT-1's failure to timely pay its taxes is granted.

      C.      <u>Failure to Pay Estimated Taxes</u>

The Trustee argues the IRS's penalty request for PT-1's failure to pay estimated taxes should be expunged because PT-1 was "incapacitated" from making those payments pursuant to Treasury Regulation § 1.1502-77A. The IRS argues that there is no reasonable cause exception to the provision authorizing penalties for the failure to make estimated tax payments.

Internal Revenue Code § 6655 imposes a penalty for a corporation's underpayment of estimated taxes. 26 U.S.C. § 6655. The required estimated tax payments "are prepayments towards the income tax which the taxpayer will ultimately owe for the current tax year." <u>In re Wilkoff</u>, 2001 WL 91624, at * 7, No. 98-3435DWS (Bankr. E.D. Pa. 2001). There is no reasonable cause exception to the imposition of this penalty. <u>See</u> 26 U.S.C. § 6655.

The Trustee cites <u>Meyer v. Commissioner</u>, 85 T.C.M. (CCH) 760, 2003 WL 118258 (T.C. 2003), in support of his argument that penalties should not be imposed on a taxpayer for failing to pay estimated taxes if the taxpayer is incapacitated. The Trustee's reliance on <u>Meyer</u> is misplaced. The <u>Meyer</u> court was deciding, in part, whether a penalty imposed on an individual taxpayer for failure to pay estimated taxes was appropriate under Internal Revenue Code § 6654. <u>Meyer</u>, 85 T.C.M. (CCH) 760, 2003 WL 118258, at *4. Here, the IRS's penalty request for PT-1's failure to pay estimated taxes rests on Internal Revenue Code § 6655. The two sections differ significantly, though both relate to failure to pay estimated taxes. Section 6654 relates to individual taxpayers and provides that a penalty should not be imposed when the penalty would be against equity and good conscience or when the individual taxpayer was disabled. 26 U.S.C. § 6654. Section 6655 relates to corporate taxpayers and does not include any exception to the imposition of the penalty. 26 U.S.C. § 6655. Nevertheless, the Trustee's motion to expunge the

IRS's request for a penalty based on PT-1's failure to pay estimated taxes is granted because the IRS's request is untimely.

Bankruptcy Rule 3003(c)(3) provides that a court "shall fix" a bar date by which proofs of claim in a Chapter 11 case shall be filed. Fed. R. Bankr. P. 3003(c)(3). Although there is no provision relating to a bar date for requesting an administrative expense payment, courts may set such a date pursuant to Bankruptcy Code § 105. See In re Reams Broadcasting Corp., 153 B.R. 520, 522 (Bankr. N.D. Ohio 1993). An administrative bar date serves the same purpose as a claims bar date, which is "finality and debtor rehabilitation." 9 Collier on Bankruptcy ¶ 3003.03[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). Allowing requests for administrative expense payment to be filed at any time would have the same effect as allowing proofs of claim to be filed at any time, making it "impossible to determine with any finality the obligations of the debtor." Id. "Generally, courts will allow amendments to proofs of claims in order 'to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth on the original claim.'" Hudson Oil, 91 B.R. at 947 (quoting In re Int'l Horizons, Inc., 751 F.2d 1213, 1216 (11th Cir. 1985)); See also In re G.L. Miller & Co., 45 F.2d 115, 116 (2d Cir. 1930) (amendments are permitted to "correct defects of form, or to supply greater particularity in the allegations of fact from which the claim arises, or to make a formal proof of claim based upon facts, which, within the statutory period, had already been brought to the notice of the trustee by some informal writing or some pleading in the bankruptcy proceedings"). Similarly, a creditor may amend its request for an administrative expense payment. See In re Atcall Inc., 284 B.R. 791, 798 (Bankr. E.D. Va. 2002) ("Proofs of claims are governed by express bar dates and the procedures for

proofs of claims and requests for payment should be as similar as possible."). However, post-bar date amendments must be carefully scrutinized to ensure that a new claim is not being filed "under the guise of an amendment." Hudson Oil, 91 B.R. at 947.

On October 24, 2002, an administrative bar date order was entered. See Docket #411. The order approved a notice to creditors, which stated, in part: "The Court has fixed December 23, 2002 at 5:00 p.m. as the last date and time by which proofs of Administrative Expenses must be filed." The notice further stated: "Each holder of a claim who is required, but fails to file a proof of administrative expense by the administrative bar date, shall be forever barred from assertion of its administrative expense against the debtors and their property." A certificate of service was filed with the Court stating that the administrative bar date notice was mailed to creditors, including the IRS, on October 29, 2002. See Docket #471.

The IRS's current administrative expense request includes a request for payment of a penalty for PT-1's failure to pay estimated taxes, which was not asserted in any of the IRS's administrative expense requests previously filed in this case. The Trustee's counsel stated that no advance notice was given that the IRS sought, or was planning to seek this estimated tax penalty claim for 2001. See Trustee's Reply Mem. in Sup. of Mot. for Summ. J. at 7. The IRS admitted that the estimated tax penalty and the failure to timely pay taxes penalty are different claims. The IRS's counsel stated:

> I don't have the breakdown in front of me as to what portion of that penalty claim [listed on the request for administrative expense payment] related to failure to pay, and what part of that penalty claim related to failure to pay estimated taxes. Those two penalties are assessed under different sections . . . .

Tr. at 49. This estimated tax penalty request is a new request by the IRS and is untimely.[2] There is no reason to excuse the IRS's late request for this penalty because the IRS knew of PT-1's failure to pay estimated taxes before the bar date passed. Therefore, the Trustee's motion to expunge the IRS's request for penalties based on PT-1's failure to pay estimated taxes must be granted because it is a new request and is time barred. See Hudson Oil, 91 B.R. at 947 ("This Court is compelled to find that the IRS is improperly attempting to file a new claim outside the bar date under the disguise of an amendment.").

II.     The Trustee's Counterclaims

The Trustee seeks summary judgment on his counterclaim seeking a declaration that the IRS is required to accept PT-1's proposed tax return for the Stub Period.[3] The Trustee also seeks summary judgment on his other counterclaims for refunds of taxes paid by PT-1 for the Short Period and for the tax period that ended June 30, 1998.

The record is insufficient to permit summary judgment to be granted on the Trustee's counterclaims. The Trustee has not explained why the IRS is legally required to accept the proposed return for the Stub Period. The IRS contends that the debtors have not complied with relevant Internal Revenue Code and Treasury Regulation requirements governing how the debtors might cease to become part of the STAR consolidated group, and therefore are not entitled to file a separate return. The Trustee has not shown that the debtors have complied with

---

[2] Although it is true that the IRS's request for payment filed on March 18, 2005, which was filed after the administrative bar date, requests a payment for "estimated tax," that request is for an estimated amount relating to the IRS's disallowance of certain net operating losses carried forward by PT-1 during the Short Period, and does not relate to the failure of PT-1 to pay estimated taxes.

[3] Although the Trustee seeks a declaration that PT-1 is permitted to file a tax return for the Stub Period, he is really requesting that the Court direct the IRS to accept the return. See Tr. at 32.

14

those requirements, nor has he cited any authority for why those provisions would be inapplicable. Nor has the Trustee made any showing supporting his counterclaim that the debtors are entitled to carry forward the net operating losses in question.

Accordingly, the Trustee's request for summary judgment on his counterclaims is denied, without prejudice to renewal upon a more complete record.

## Conclusion

For the foregoing reasons, the Trustee's summary judgment motion is granted in part and denied in part. A separate order will issue herewith.

Dated:  Brooklyn, New York
       March 26, 2007

                                  *\s\Carla E. Craig*
                                  CARLA E. CRAIG
                                  Chief United States Bankruptcy Judge