UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

PT-1 COMMUNICATIONS, INC.;                    Case Nos. 01-12655-CEC
PT-1 LONG DISTANCE, INC.; and                          01-12658-CEC
PT-1 TECHNOLOGIES, INC.,                                01-12660-CEC

                        Debtors.              Chapter 11


-------------------------------------------------------------x


<u>DECISION</u>


Appearances:


Laurence May, Esq.                    Jonathan T. Cain, Esq.
Greg Friedman, Esq.                   Frank Pimentel, Esq.
Cole, Schotz, Meisel, Forman &        Sara J. Crasson, Esq.
        Leonard, P.A.                 Mintz Levin Cohn Ferris Glovsky and
900 Third Avenue, 16th Floor                  Popeo, P.C.
New York, New York 10022              701 Pennsylvania Avenue, NW, Suite 900
Attorneys for Edward P. Bond, Liquidating   Washington, D.C. 20004
Trustee of the Liquidating Trust U/A/W      Attorneys for Universal Service
PT-1 Communications, Inc., PT-1 Long        Administrative Company
Distance, Inc., and PT-1 Technologies, Inc.


                        CARLA E. CRAIG
                Chief United States Bankruptcy Judge

1

On September 2, 2004, the Honorable Conrad B. Duberstein, to whom this case was assigned, issued an order (the "Reconsideration Order") denying the motion of Universal Services Administrative Company ("USAC") to reconsider a prior order (the "Claim Order") reducing USAC's claim against PT-1 Communications, Inc. ("PT-1" or the "Debtor").  The Reconsideration Order was appealed, and this matter comes before the Court on remand from the District Court to decide whether USAC's failure to timely object to the reduction of its claim constitutes "excusable neglect" warranting relief from the Claim Order, and for further proceedings consistent with the District Court's decision.  For the following reasons, USAC's motion for relief from the Claim Order is denied.

<u>Jurisdiction</u>

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (o) and 1334, 11 U.S.C. § 1142, and the Eastern District of New York standing order of reference dated August 28, 1986, and the order dated November 23, 2004 confirming the plan of reorganization in this case.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

<u>Background</u>

The following facts are undisputed, or are matters of which this Court may take judicial notice.

These bankruptcy cases were commenced on March 9, 2001, by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  No chapter 11 trustee was ever appointed.  PT-1 and affiliated debtors, as debtors and debtors in possession, continued in possession of their assets and in the management of their businesses until the Debtors' Second

Amended Joint Plan of Reorganization dated as of August 31, 2004 was confirmed on November 23, 2004.

On April 9, 2001, the National Exchange Carrier Association ("NECA") timely filed a proof of claim on USAC's behalf, asserting an unsecured claim of $5,745,552.65 against the Debtor (the "Claim").  The Claim stated that it was based on a "Federal Universal Service Obligation," which was incurred on December 15, 2000, January 16, 2001, February 14, 2001, and March 15, 2001.  The Claim also listed "80 S. Jefferson Rd, Whippany, NJ 07981" as USAC's address for noticing purposes.  This address belonged to NECA, USAC's bankruptcy claims agent at the time.

On May 1, 2002, the Debtor filed a motion objecting to a number of claims against the estate, including the Claim, which the Debtor sought to reduce from $5,745,552.65 to $2,526,670.  The Debtor argued that the amount sought by USAC exceeded the Debtor's liability to USAC, and that according to its books and records, the correct amount owed to USAC was $2,526,670.  The docket entry for the motion did not identify the Claim as one of the claims subject to the motion.  An affidavit of service filed with the motion stated that, on April 26, 2002, the notice of hearing on the motion and the motion were served on USAC at the address listed on the Claim.

On May 30, 2002, the Court issued the Claim Order granting the Debtor's motion and reducing the Claim.  The docket entry for the Claim Order, which was made on June 6, 2002, did not identify the Claim as one of the claims affected by the order, and identified only the claims that were expunged by the Claim Order.

On May 17, 2004, USAC filed a motion to reconsider the Claim Order ("USAC's Motion"), arguing it never received notice of the Debtor's motion, and asserting that the Claim, as originally filed, sought the correct amount.  The Debtor opposed USAC's motion, and the motion was denied at a hearing held on August 19, 2004.  The Reconsideration Order, denying the USAC's Motion, was issued on September 2, 2004, and was entered on September 8, 2004.

USAC appealed the Reconsideration Order and the denial of USAC's Motion, and this renewed motion for reconsideration is the result of the District Court's remand to consider whether USAC is entitled to relief from the Claim Order on the basis of excusable neglect, and for proceedings consistent with the District Court's decision.

Discussion

Section 502(j) of the Bankruptcy Code[1] provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause," and that the "reconsidered claim may be allowed or disallowed according to the equities of the case."  11 U.S.C. § 502(j).  Rule 3008 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate."  Fed. R. Bankr. P. 3008.  Such motions are analyzed under Rule 59 or 60 of the Federal Rules of Civil Procedure ("Rules"), made applicable in bankruptcy cases by Bankruptcy Rules 9023 and 9024. In re Enron Corp., 352 B.R. 363, 367-368 (Bankr. S.D.N.Y. 2006); In re Johansmeyer, 231 B.R. 467, 470 (E.D.N.Y. 1999).  See also In re JWP Info. Servs., Inc., 231 B.R. 209, 211 n.5 (Bankr. S.D.N.Y. 1999) ("[C]ourts, in evaluating [Bankruptcy] Code § 502(j) motions, are to apply the standard set forth [in Rule 60(b)].").

---

[1] Unless otherwise specified, all statutory references herein are to the Bankruptcy Code, Title 11 U.S.C.

USAC argues that the Claim Order was not entered, and therefore never became effective as to USAC, because the docket entry did not list the Claim as one of the claims affected by the Claim Order. Thus, USAC argues, the time to seek reconsideration or appeal the Claim Order never began to run. This argument must be rejected.

Bankruptcy Rule 5003(a) provides that the clerk of the court "shall keep a docket in each case under the [Bankruptcy] Code and shall enter thereon each judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of the United States Courts." Fed. R. Bankr. P. 5003(a). An order or judgment is not effective until it is entered on the docket. Fed. R. Bankr. P. 9001(7), 9021; Barbieri v. RAJ Acquisition Corp. (In re Barbieri), 199 F.3d 616, 622 (2d Cir. 1999). Here, there is no dispute that the Claim Order was docketed, although the docket entry describing the Claim Order made no reference to the Claim.

USAC relies on Gravel and Shea v. Vermont National Bank, 162 B.R. 969 (D. Vt. 1993), for support of its argument that the Claim Order was never entered. However, that case involved a docket entry stating that an order was entered granting a motion, when in fact the order denied the motion. Gravel and Shea, 162 B.R. at 972. Because the docket entry for the order was clearly incorrect, the court ruled that the time to appeal the order began to run from the date the docket entry was corrected to reflect that the order denied the motion. Id. at 972-973.

USAC also relies on Trans Union Leasing Corp. v. Alithochrome Corp. (In re Alithochrome Corp.), 34 B.R. 354 (Bankr. S.D.N.Y. 1983). There, a judgment was entered on the docket of an adversary proceeding, but not on the docket of the main bankruptcy case. Alithochrome, 34 B.R. at 356. The court in Alithochrome determined that relief under Rule 60 was warranted because, under the facts presented there, where the party was actively monitoring

the bankruptcy case docket for the subject order, "[i]t [was] entirely understandable that even a seasoned associate of the law firm assisted by a paralegal missed the entry in the adversary proceeding docket that showed that an 'Order and Judgment' of the Bankruptcy Court had been entered." <u>Id.</u> at 357.

The facts presented in <u>Gravel and Shea</u> and <u>Alithochrome</u> are distinguishable, and these cases do not support a conclusion that the Claim Order was never entered on the docket. Unlike <u>Gravel and Shea</u>, the docket entry for the Claim Order was correct, although it did not identify USAC as a party affected by the Claim Order. USAC has not provided any authority to support its argument that where a docket entry does not identify a claim affected by an order, the entry is ineffective under Bankruptcy Rules 5003 and 9021 with respect to that claim, preventing the commencement of the period to seek reconsideration or appeal. Nor does <u>Alithochrome</u> stand for this proposition; no claim was made in that case that any time period under Rule 60 was tolled.

The responsibility for entering an order or judgment on a docket belongs to the clerk and not to the parties or the court. <u>Silivanch v. Celebrity Cruises, Inc.</u>, 333 F.3d 355, 365 (2d Cir. 2003) (discussing Rule 79(a), which is analogous to Bankruptcy Rule 5003). The requirement of entry is a "ministerial rule of procedure, intended to ensure that case dockets are properly maintained as useful sources of information for the litigants and court personnel." <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 910 (2d Cir. 1997) (discussing a local rule of the court regarding entry of orders and judgments). To comply with this record keeping function, this Court's Local Bankruptcy Rule 9021-1(a) provides that "[t]he Clerk's notation in the appropriate docket of an order, judgment, or decree shall constitute the entry of the order, judgment, or decree." E.D.N.Y. LBR 9021-1(a). There is no requirement that the notation list all of the terms

of the order.  In this case, the Claim Order was entered on the docket in accordance with

Bankruptcy Rules 5003 and 9021 on June 6, 2002, because a notation was made on the case

docket indicating that the Court issued an order granting the Debtor's motion.

Given that the Claim Order was entered on June 6, 2002, and that USAC's Motion was

not filed within ten days after entry of the order, the motion must be evaluated under Rule 60.

Rule 60 provides, in pertinent part:

> (a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> > (1)   mistake, inadvertence, surprise, or excusable neglect;
> >
> > (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> >
> > (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> >
> > (4)   the judgment is void;
> >
> > (5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> >
> > (6)   any other reason that justifies relief.

      (c) Timing and Effect of the Motion.

            (1) Timing. A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

Fed. R. Civ. P. 60 (a) - (c)(1).

      USAC seeks relief from the Claim Order under Rule 60(a), arguing that the docket entry should be corrected to identify the Claim as one of the claims affected by the order.  Upon correction of the docket entry, USAC argues, the time to seek reconsideration or to appeal the Claim Order will commence to run.  However, a party's time to seek review of an order is not tolled, or does not begin to run anew, upon the reentry or the correction of an order, where the substance of the order is not changed.  FTC v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 211 (1952); Carroll v. United States, 339 F.3d 61, 71 (2d. Cir. 2003); Rezzonico v. H & R Block, Inc., 182 F.3d 144, 150-151 (2d. Cir. 1999).  Therefore, even if the Claim Order were vacated under Rule 60(a), and then redocketed with the docket entry identifying the Claim as one of the claims affected by the order, USAC's time to seek review of the Claim Order would not recommence because the substance of the Claim Order remains the same.  See FTC, 344 U.S. at 211-212 ("Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken . . . begin to run anew." (footnotes omitted)).  Therefore, USAC's time to seek relief from the Claim Order is calculated from June 6, 2002, the date the Claim Order was entered.

      USAC argues that the Claim Order should be vacated pursuant to Rule 60(b)(1) because its failure to oppose the Debtor's motion objecting to the Claim constituted "excusable neglect."

Bankruptcy Rule 9024 provides that Rule 60 applies to bankruptcy cases, "except that . . . a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c)."  Fed. R. Bankr. P. 9024.

Before the merits of USAC's argument under Rule 60(b)(1) are addressed, it is necessary to decide whether the motion is timely, and this depends upon whether the Claim Order was "entered without a contest," as provided in Bankruptcy Rule 9024.  This is dispositive of USAC's Motion to the extent it seeks relief under Rule 60(b)(1), because USAC's Motion was made more than one year after the Claim Order was entered.  If the Claim Order was "entered without a contest," the requirement that relief under Rule 60(b)(1) be sought not later than one year after entry of the order is inapplicable.  Fed. R. Bankr. P. 9024; Fed. R. Civ. P. 60(c)(1).  On the other hand, if the Claim Order was not "entered without a contest," USAC's Motion would be timely only if it had been made within a reasonable time, not to exceed one year after the entry of the Claim Order.  Fed. R. Bankr. P. 9024; Fed. R. Civ. P. 60(c)(1).

The Second Circuit recently interpreted the language "entered without a contest" as used in Bankruptcy Rule 9024.  In Pleasant v. TLC Liquidation Trust (In re Tender Loving Care Health Services, Inc.), 562 F.3d 158 (2d Cir. 2009), chapter 11 debtors filed and served a motion objecting to a creditor's claim.  Tender Loving Care, 562 F.3d at 159-160.  Negotiations ensued, resulting in a court-approved settlement fixing the amount of the claim.  Id. at 160. Subsequently, the debtors' plan was confirmed, providing for the creation of a liquidating trust. Id.  More than a year after the entry of the order approving the settlement, the trustee of the liquidating trust sought reconsideration of the order, arguing that the stipulated amount of the

claim included post-petition interest on a general unsecured claim, which is not permitted under

§ 502(b)(2).  Id.

The Second Circuit was faced with the issue of whether the stipulated order allowing the

claim was "entered without a contest" under the facts presented in that case.  In reaching its

decision, the court noted the Advisory Committee Notes to Bankruptcy Rule 9014, which state

that "the filing of an objection to a proof of claim . . . creates a dispute which is a contested

matter."  Id. at 162.  The court held that, because a contested matter is initiated upon the filing of

an objection to a claim, "when [the claim objection is] thereafter resolved, the claim cannot be

held to have been 'entered without a contest.'"  Id.  Therefore, the Second Circuit held, the order

approving the settlement, and fixing the creditor's claim, was not "entered without a contest,"

even though the parties settled the dispute and the debtors' objection to the creditor's claim was

never litigated.  Id. at 163.

At first blush, it appears that the Claim Order was not "entered without a contest" because

it was granted as a result of the Debtor's motion to reduce the Claim.  See id. at 162 ("It was the

[d]ebtors' filed objection that triggered the contest.").  However, it could be argued that an order

allowing or disallowing a claim is not "entered without a contest," if the claim objection, which

would normally create a contested matter, was not properly served on the creditor whose claim is

being affected.  See In re Enron Creditors' Recovery Corp., No. 01-16034, 2007 WL 2480531

at*4 (Bankr. S.D.N.Y. Aug. 28, 2007) (finding that an order disallowing a claim was "entered

without a contest" because the creditor was not given notice of the objection to its claim).  This

argument is supported by the text of § 502(b)[2] and Bankruptcy Rules 3007(a)[3] and 9014(a)[4],

which require notice of an objection to the allowance of a claim.  Although the Second Circuit, in

Tender Loving Care, stated that a contested matter is created upon the filing of the objection to a

claim, in that case, there was no dispute that the creditor received notice of the objection to its

claim.  Tender Loving Care, 562 F.3d at 160.

     USAC argues that it did not receive notice of the Debtor's motion to reduce the Claim.

First, USAC argues that NECA has no record of receiving the motion, and that NECA was in the

practice of forwarding "motions and other paper[s] received in connection with bankruptcies in

which USAC has asserted claims after the expiration of NECA's contract with USAC."  (USAC

Mem. in Supp. 18.)  Second, USAC contends that it informed the Court by letter dated July 13,

2001, of a change of address when it terminated its contract with NECA and retained

PricewaterhouseCoopers as its noticing agent.  USAC contends that an amended proof of claim

reflecting the new address was attached to the letter.  For the following reasons, USAC's

argument that it was not properly noticed, or that it did not receive actual notice, of the Debtor's

objection to the Claim must be rejected.

---

[2]  Section 502(b) provides, with certain exceptions not relevant here, that "if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim."  11 U.S.C. § 502(b).

[3]  Bankruptcy Rule 3007(a) provides, in pertinent part, that "[a] copy of [an] objection [to the allowance of a claim] with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant."  Fed. R. Bankr. P. 3007(a).

[4]  Bankruptcy Rule 9014(a) provides, in pertinent part, that "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  Fed. R. Bankr. P. 9014(a).

"Proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." Hagner v. United States, 285 U.S. 427, 430 (1932). To invoke the presumption, a party must prove that the letter was properly addressed, stamped, and mailed. In re Dana Corp., No. 06-10354, 2007 WL 1577763 at *4 (Bankr. S.D.N.Y. May 30, 2007); In re Robinson, 228 B.R. 75, 81 (Bankr. E.D.N.Y. 1998); Cablevision Sys. Corp. v. Malandra (In re Malandra), 206 B.R. 667, 673 (Bankr. E.D.N.Y.1997); In re O.W. Hubbell & Sons, Inc., 180 B.R. 31, 34 (N.D.N.Y. 1995); In re Figueroa, 33 B.R. 298, 302 (Bankr. S.D.N.Y. 1983). Evidence of proper mailing may be introduced either by an affidavit or testimony of a party stating that he personally mailed the letter, or that the letter was mailed through regular office procedures followed in the regular course of business. Meckel v. Cont'l Res. Co., 758 F.2d 811, 817 (2d Cir. 1985); Kleyman v. Cont'l Cas. Co., No. CV-06-3678, 2007 WL 29388 at *5 (E.D.N.Y. Jan. 4, 2007); Ms. Interpret v. Rawe Druck-und Veredlungs-GmbH (In re Ms. Interpret), 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998); In re 401 E. 89th St. Owners, Inc., 223 B.R. 75, 80-81 (Bankr. S.D.N.Y. 1998); O.W. Hubbell, 180 B.R. at 34; DeSimone v. Siena College, No. 90-CV-1058, 1991 WL 64857 at *2 (N.D.N.Y. Apr. 25, 1991). "Thus, it is not necessary for the sender to express a specific memory of mailing the exact notice to obtain the presumption; rather, a statement that the individual followed the office procedure and that there are records indicating the letter was sent is satisfactory." BASF Corp. v. Norfolk Southern Ry. Co., No. 04-CV-9662, 2008 WL 678557 at *4 (S.D.N.Y. Mar. 10, 2008) (citing Vill. of Kiryas Joel Local Dev. Corp. v. Ins. Co. of N. Am., 996 F.2d 1390, 1395 (2d Cir. 1993). See also Kleyman, No. CV-06-3678, 2007 WL 29388 at *5.

This presumption may be rebutted by denial of receipt, supported by evidence "that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable." Meckel, 758 F.2d at 817. "[I]n the context of a mass mailing there may be circumstantial evidence rebutting proof of mailing, without direct proof that the routine office procedure was either not followed or carelessly carried out." Id. The presumption of receipt may also be rebutted by "testimony denying receipt in combination with evidence of standardized procedures for processing mail." Robinson, 228 B.R. at 82. See also Hogarth v. New York City Health & Hosps. Corp., No. 97 Civ. 0625, 2000 WL 375242 at *4 (S.D.N.Y. Apr. 12, 2000) ("[T]he presumption of delivery can be successfully rebutted with a sworn affidavit giving a detailed description of the mail procedures followed at a company for all incoming mail supporting the conclusion that the mail was never received.")

The Debtor filed an affidavit of service, dated April 29, 2002, signed by Stanley Washington, stating that, on April 26, 2002, he served the Debtor's motion objecting to the Claim, along with the notice of hearing, to NECA at the address shown on the Claim, "by first class mail, by depositing a true copy of same in a post-paid, properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York."  (Aff. of Service, dated April 29, 2002, Case No. 01-12655, Docket #341.)  The affidavit of service was prepared three days after the papers were served, which is sufficiently contemporaneous to the date of mailing, and is credible evidence that the Debtor's motion, and the notice of hearing thereon, were served on USAC at the address listed on the Claim on April 26, 2002.  Accordingly, it is presumed that NECA, on behalf of USAC, received notice of the Debtor's motion, at the address shown on the Claim.

USAC's denial that NECA received the Debtor's motion objecting to the Claim, without more, is insufficient to rebut this presumption.  In re Wintrade, Inc., No. 01-13007, 2007 WL 3104029 at *1 (Bankr. S.D.N.Y. Oct. 22, 2007) ("Federal courts in New York 'uniformly' take the strict view that an affidavit of non-receipt is not sufficient to rebut the presumption of receipt."); Malandra, 206 B.R. at 673-674.  As support for its argument that it never received the motion, USAC attaches excerpts of the deposition transcript of Ms. Lisa Tubbs, an employee of NECA at the time the Debtor's motion was served, arguing that had NECA received the motion, it would have forwarded the motion to USAC.  USAC does not contend that Mr. Washington's affidavit of service is not credible.

The deposition excerpts offered by USAC do not support the conclusion that NECA maintained standardized procedures in handling incoming mail or forwarding the mail to USAC after July 2001.  Rather, Ms. Tubbs testified that, while emails were sent to Tracy Beaver, an employee of USAC, notifying Ms. Beaver of court pleadings received by NECA from July 2001 through December 2004, she (Ms. Tubbs) did not send out those emails, and that the emails were sent by other NECA employees.[5]  (USAC App. 39-41, 52.)  Ms. Tubbs also testified that the emails to USAC were "a courtesy," and that copies of the documents received by NECA were forwarded "[i]f there was a specific request."  (USAC App. 41-42.)  This testimony is insufficient to establish a standardized procedure instituted by NECA to forward mail to USAC after July 2001, the time NECA ceased acting as USAC's agent.  Therefore, USAC has not rebutted the

---

[5] It should be noted that USAC's appendix does not contain the entire transcript of Ms. Tubbs's deposition, and therefore, this Court relies on the excerpts provided.  It should also be noted that USAC was offered the opportunity to present additional evidence with respect to the mailing of the letter and proof of claim to the Court, and declined to do so.  (Tr. 10/15/08 at 44-45.)

presumption that NECA received the Debtor's motion on USAC's behalf.  See Robinson, 228

B.R. at 82 (presumption of receipt was not rebutted by affidavit stating that all mail was filed,

and the file did not contain the notice at issue); Ms. Interpret, 222 B.R. at 414 (no evidence of

"standardized sorting and routing procedures" to rebut presumption of receipt); cf. Hogarth, No.

97 Civ. 0625, 2000 WL 375242 at *5 (rebuttal shown where alleged recipient "established a

regular practice of logging certified articles delivered to the office, which includes recording the

article number, name of sender, and addressee," and there was "no record in the log book"

indicating receipt).

On the other hand, USAC has not established that the letter notifying the Court of its

change of address, or amended proof of claim, was mailed to the Court before the Debtor served

its motion.  Ms. Tubbs testified that she signed the letter and mailed it to the Court.  (USAC App.

36.)  However, Ms. Tubbs also testified, a few lines later, that she did not recall who was charged

with the responsibility of mailing the letter, but that "we mailed out several letters to all the

courts that we had filed any proofs of claim in, so it was a voluminous mailing."  (USAC App.

37.)  She also testified that she had no reason to believe that the letter was not sent in the normal

course of business.  (USAC App. 48.)

This testimony is insufficient to invoke a presumption that the Court received the letter

and amended proof of claim.  Ms. Tubbs's testimony was given in September 2006, five years

after the letter was supposedly mailed.  She testified that "we" mailed several letters to all the

courts in which NECA had filed a proof of claim on USAC's behalf.  (USAC App. 37.)  It does

not appear that Ms. Tubbs personally deposited the letter in the mail; though she initially said

that she mailed it, she later said that did not know who was responsible for mailing it, and that

her practice in handling mail was to place it in an outbox or give it to a member of her staff. (USAC App. 37,47.)  She also did not testify that proper postage was affixed, or that the envelope was properly addressed.  USAC's argument in support of invoking the presumption of receipt with respect to this letter is also undercut by Ms. Tubbs's testimony that "[i]t wouldn't have been [her] intention to send something out unsigned," and by the fact that the amended proof of claim, which was allegedly attached to the letter, is unsigned.  (USAC App. 37.)  The record is insufficient to establish that Ms. Tubbs personally mailed the letter on July 13, 2001, or on any other date prior to the service of the Debtor's motion.  See 401 E. 89th St. Owners, 223 B.R. at 81 (presumption of receipt not invoked by affidavit dated two months after alleged service by party "with no personal knowledge of how the mailing would have been handled"); Phillips v. Riverside, Inc., 796 F. Supp. 403, 407 (E.D. Ark. 1992) (no presumption of receipt where, although a witness testified that she remembered mailing a letter, she "did not indicate whether she or someone else actually placed it in the mailbox or delivered it to the post office," nor was there testimony that proper postage was affixed).

Ms. Tubbs's testimony is also insufficient to establish that NECA maintained a standard procedure for mailing letters.  When asked about NECA's office mailing procedure, Ms. Tubbs testified that the task of mailing the letters was performed "through someone in my staff, or just by putting it in an out-bin, and so forth."  (USAC App. 47.)  Ms. Tubbs testified that she "rarely went to the mail room" herself, and, as a general rule, was confident that letters were mailed when put in an "out-bin or a corporate place."  (USAC App. 47.)  Therefore, it appears that letters were sometimes placed in an out-bin, and that sometimes letters were given to members of her staff to mail.  (USAC App. 47.)  Nor is there any testimony concerning any office procedures to

insure that outgoing mail was correctly addressed.  This testimony does not establish that NECA

utilized standardized procedures for mailing letters, or that the letter to the Court was mailed

according to any such procedure.  The evidence presented by USAC falls short of proving that

the letter was mailed to the Court on July 13, 2001, or on any other date prior to the service of the

Debtor's motion.[6]  See Phillips, 796 F. Supp. at 407; DeSimone, No. 90-CV-1058, 1991 WL

64857 at *3.

Moreover, the presumption of receipt is generally invoked by the mailing party against

the presumed recipient.  Here, the mailing party, USAC, is seeking to invoke the presumption

against the Debtor, which was not the presumed recipient of the letter or the amended proof of

claim.  USAC is not seeking to invoke the presumption of mailing in order to show that its proof

of claim was properly filed with the Court, but rather to show that the Debtor did not properly

serve the motion objecting to the Claim.  To the contrary, the Debtor served USAC with its

motion at USAC's address for notice as reflected on the docket and claims register, which was

the proper method of giving notice of its motion.  Fed. R. Bankr. P. 2002(g)(1).  It should be

noted that USAC corresponded with the Debtor after July 2001 using the address listed on the

Claim, and informed the Debtor that it may respond USAC to the address listed on the Claim.

(Aff. of Laurence May, dated October 8, 2008, Ex. F.)  Therefore, it is clear that USAC

continued to use the address listed in the Claim, at least for some purposes.  See Fed. R. Bankr.

---

[6] Courts are split on whether the presumption of receipt applies when the court is the alleged recipient. Compare In re Nimz Transp. Inc, 505 F. 2d 177, 179 (7th Cir. 1974) (presumption applied that court received poof of claim), In re Pyle, 201 B.R. 547, 551 (Bankr. E.D. Cal. 1996) (same), and In re Kero-Sun, Inc., 63 B.R. 50, 53-54 (D. Conn. 1986) (same) with Chrysler Motors Corp. v. Schneiderman, 940 F.2d 911, 913-914 (3d Cir. 1991) (presumption of receipt does not apply to the filings of proofs of claim) and In re 50-Off Stores, Inc., 220 B.R. 897, 906 (Bankr. W.D. Tex. 1998) (same).  This Court does not hold that the presumption of receipt arises when a court is the recipient, but that, even if the presumption may be invoked, the record does not satisfy the applicable standard to invoke the presumption.

P. 2002(g) ("[A]n entity and a notice provider may agree that when the notice provider is directed

by the court to give a notice, the notice provider shall give the notice to the entity in the manner

agreed to and at the address or addresses the entity supplies to the notice provider.").

This Court concludes that the Debtor properly filed and served its motion objecting to the

Claim, and that the Claim Order was not "entered without a contest."  Therefore, any relief under

Rule 60(b)(1) must have been sought within a reasonable amount of time, not to exceed one year,

following entry of the Claim Order.  Given that USAC's Motion was filed almost two years after

the date of entry of the Claim Order, the motion is untimely to the extent it seeks relief under

Rule 60(b)(1).

USAC now argues, for the first time, that, in the event the relief sought under Rule

60(b)(1) is untimely, the Claim Order should be vacated under Rule 60(b)(6).

Relief pursuant to Rule 60(b)(6) may only be granted under extraordinary or exceptional

circumstances.  Grace v. Bank Leumi Trust Co., 443 F.3d 180, 190 n. 8 (2d Cir. 2006);

DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d. Cir. 1994); Matarese v. LeFevre, 801 F.2d 98,

106 (2d. Circ. 1986).  This subsection is properly invoked only when the "asserted grounds for

relief are not recognized in clauses (1)-(5) of the Rule."  In re Calpine Corp., 363 B.R. 709, 711

(Bankr. S.D.N.Y. 2007).  Although a motion pursuant to Rule 60(b)(6) is not subject to a specific

time limitation, it must be brought within a reasonable time. Fed. R. Civ. P. 60(c).  The Second

Circuit has held that a movant must show "highly convincing" evidence supporting the motion,

good cause for failing to act sooner, and that granting the motion would not cause undue hardship

on the other party.  Kotlicky v. U.S. Fidelity & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987).

USAC contends that substantial justice requires relief from the Claim Order, and that relief should not be barred by its procedural failure to file its motion within the limitations period prescribed by Rule 60(b)(1). This argument is insufficient to warrant vacatur of the Claim Order under Rule 60(b)(6). "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." Taylor v. Freeland & Kronz, 503 U.S. 638, 644 (1992). To allow a court to address the merits of an argument at any time, regardless of whether proper procedure was followed, would undermine the purpose of the limitations periods prescribed by the Rules and the Bankruptcy Rules. See Tender Loving Care, 562 F.3d at 163 ("[T]he issue is not whether just 'cause' exists [under § 502(j)] to correct a substantive mistake but whether the procedural mechanism for correcting the mistake was timely invoked. It was not."). As explained by the Second Circuit:

> We operate in an environment . . . in which substantial rights may be, and often are, forfeited if they are not asserted within time limits established by law. Judges, of course, make mistakes. We . . . have considerable sympathy for those who, through mistakes - counsel's inadvertence or their own - lose substantial rights in that way. And there is, indeed, an institutionalized but limited flexibility at the margin with respect to rights lost because they have been slept on. But the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced - where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.

Silivanch, 333 F.3d at 367-368 (footnotes omitted).

USAC also argues that relief under Rule 60(b)(6) is warranted because the delay in seeking reconsideration was caused "entirely by the blunder of the clerk in failing to enter the [Claim] Order on the docket so that not even a diligent search by USAC would have disclosed

that USAC was under a burden to act to preserve its rights." (USAC Supp. Mem. 6-7.) USAC also blames its failure to seek timely reconsideration on the clerk's alleged failure to give notice of entry of the Claim Order as required by Bankruptcy Rule 9022.

These arguments do not constitute grounds for relief under Rule 60(b)(6). First, given that USAC had notice of the Debtor's motion, these attempts to explain USAC's failure to oppose the Debtor's motion, or to appeal or to seek reconsideration of the Claim Order, fall under the Rule 60(b)(1) category of excusable neglect, and therefore cannot be asserted under the catchall provision of Rule 60(b)(6). New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005 ("Because we find that there was no failure of notice [of a motion for a default judgment] required by Rule 55(b)(2), and because the remainder of the Defendants' argument essentially raises an issue of excusable neglect, we construe the Defendants' motion to vacate [under Rule 60(b)(6)] as one pursuant to Rule 60(b)(1)."); Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986) ("As [Rule 60](b)(6) applies only when no other subsection is available, grounds for relief may not be mistake, inadvertence, surprise or excusable neglect.").

Second, even if USAC's Motion is evaluated under Rule 60(b)(6), USAC has not shown that it acted diligently to ascertain the status of the Debtor's case, the Debtor's motion, or the Claim, which would be necessary to establish the existence of exceptional circumstances warranting relief pursuant to Rule 60(b)(6). See Mizell v. Attorney General of N.Y., 586 F.2d 942, 945 n. 2 (2d Cir. 1978), cert. denied, 440 U.S. 967 (1979) ("Although this circuit has not squarely addressed the issue [of whether a court may vacate and re-enter a judgment under Rule 60(b) to allow a timely appeal], prior decisions indicate that a Rule 60(b)(6) motion may not be granted absent some showing of diligent effort by counsel to ascertain the status of the case."

(internal citation omitted)); Witty v. Dukakis, 3 F.3d 517, 520 (1st Cir. 1993) ("[P]arties to an ongoing case have an independent obligation to monitor all developments in the case and cannot rely on the clerk's office to do their homework for them."); cf. Alithochrome, 34 B.R. at 357 (vacating a judgment under Rule 60(b)(6) because the party diligently monitored the case docket for the entry of the order at issue).

 USAC's argument that relief should be granted under Rule 60(b)(6) because the clerk did not provide notice of entry of the Claim Order must also be rejected.  It has been held that the failure of the clerk's office to provide notice of entry does not provide grounds to grant relief under Rule 60(b)(1) on the basis of excusable neglect, a lower standard than the one embodied in Rule 60(b)(6). See Wilson v. Thompson, 138 Fed. Appx. 556, 557 (4th Cir. 2005). See also Baker v. Thomas, 86 Fed. Appx. 906, 908-909 (6th Cir. 2004) ("The courts have unanimously agreed, a mere lack of . . .  notice [of entry of a judgment] does not justify Rule 60(b) relief." (quoting 12 Moore's Federal Practice, § 60.48[6][c] (3d ed. 1997))); Hasset v. Far W. Fed. Sav. & Loan Ass'n (In re O.P.M. Leasing Servs. Inc.), 769 F.2d 911, 918 (2d. Cir. 1985) (in the context of determining whether the time limit to file a notice of appeal should have been extended pursuant to Rule 4(a)(5) on the basis of excusable neglect, stating that "[t]he case is thus the unremarkable one in which counsel allegedly did not receive notice [of the order] from the court which, standing alone, is not a sufficient ground for finding excusable neglect"); In re Spiegel, Inc., 385 B.R. 35, 40 (S.D.N.Y. 2008) (lack of notice of entry does not constitute excusable neglect warranting extension of time to file appeal under Bankruptcy Rule 8002).

21

Accordingly, USAC is not entitled to relief from the Claim Order pursuant to Rule 60(b)(1) or (6).[7]

Conclusion

For the foregoing reasons, USAC's motion for relief from the Claim Order is denied.  A separate order will issue.

Dated: Brooklyn, New York
      August 28, 2009

*s/Carla E. Craig*              
CARLA E. CRAIG
Chief United States Bankruptcy Judge

---

[7] In light of the conclusion that the Claim Order may not be set aside under Rule 60(b), the Court does need not to address USAC's request that the entry of default be set aside pursuant to Rule 55(c), made applicable to bankruptcy cases by Bankruptcy Rule 7055.