UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:
PT-1 COMMUNICATIONS, INC.;                    Case Nos. 01-12655-CEC
PT-1 LONG DISTANCE, INC.; and                           01-12658-CEC
PT-1 TECHNOLOGIES, INC.,                                  01-12660-CEC

                              Debtors.                 Chapter 11
-------------------------------------------------------------x


<u>DECISION</u>



Appearances:


Laurence May, Esq.                          Thomas P. Cole, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.  United States Department of Justice
900 Third Avenue, 16th Floor                Tax Division
New York, New York 10022                    P.O. Box 55
Attorney for Edward P. Bond, Liquidating    Ben Franklin Station
Trustee of the Liquidating Trust U/A/W PT-1 Washington, D.C. 20044
Communications, Inc., PT-1 Long Distance,   Attorney for the Internal Revenue Service
Inc., and PT-1 Technologies, Inc.




CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of the Liquidating Trustee (the "Trustee") of the Liquidating Trust U/A/W PT-1 Communications, Inc., PT-1 Long Distance, Inc., and PT-1 Technologies, Inc. (the "Liquidating Trust") for reconsideration of this Court's denial of the Trustee's request to carry back a net operating loss incurred in the 2003 tax year (the "2003 NOL").  For the following reasons, the motion is denied.

## Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 1142, the Eastern District of New York standing order of reference dated August 28, 1986, and the order dated November 23, 2004 confirming the plan of reorganization in this case.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Background

The history of the dispute between the Trustee and the Internal Revenue Service (the "IRS") is lengthy, and is the subject of four written decisions.  In re PT-1 Commc'ns, Inc., 447 B.R. 115 (Bankr. E.D.N.Y. 2011); In re PT-1 Commc'ns, Inc., 403 B.R. 250 (Bankr. E.D.N.Y. 2009); In re PT-1 Commc'ns, Inc., 386 B.R. 402 (Bankr. E.D.N.Y. 2007); In re PT-1 Commc'ns, Inc., 357 B.R. 217 (Bankr. E.D.N.Y. 2006).  In this decision, familiarity with the history of this case will be assumed, and background discussion will be limited to a brief recitation of relevant facts.

On March 9, 2001, PT-1 Communications, Inc., PT-1 Long Distance, Inc., and PT-1 Technologies, Inc. (together, "PT-1" or the "Debtors") commenced these bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  No chapter 11 trustee was ever appointed.  PT-1, as debtors and debtors-in-possession, continued in possession

of their assets and in the management of their businesses until the Debtors' Second Amended

Joint Plan of Reorganization dated as of August 31, 2004 ("Plan") was confirmed on November

23, 2004.  At that time, as provided in Article 5 of the Plan, certain of the Debtors' assets, rights,

and powers were transferred to the Liquidating Trust.

On September 21, 2007, the Trustee filed a motion for summary judgment seeking,

among other things, a tax refund of $6,913,228, plus interest (the "2001 Tax Refund") which was

paid with the Debtors' tax return for the period of March 9, 2001 through December 31, 2001

(the "Short Period").  The 2001 Tax Refund is based upon the carryforward and carryback of net

operating losses incurred in the 2000, 2002, and 2003 tax years, and the period January 1, 2001

to March 8, 2001 (the "Stub Period"), which was the portion of the 2001 tax year preceding the

Debtors' bankruptcy filing.  These net operating losses are partially based upon bad debt

deductions, M-1 adjustments deducting bad debts not claimed as tax deductions in prior years,

and the write-off of the unamortized adjusted basis of an indefeasible right of use.

On March 31, 2009, this Court denied the Trustee's motion with respect to the 2001 Tax

Refund, and scheduled that contested matter for an evidentiary hearing.  PT-1 Commc'ns, 403

B.R. at 277.  The evidentiary hearing was held on July 2, 2009, August 26, 2009, and August 27,

2009, and two rounds of post-trial briefing ensued.  Thereafter, on July 28, 2010, the IRS filed a

motion to reopen the record, which was argued on September 15, 2010.

On March 3, 2011, the Court issued a decision (the "Decision") allowing (1) the

carryforward of a net operating loss of $7,423,328 incurred in the 2000 tax year; (2) bad debt

deductions totaling $22,682,020.46 for the Stub Period, Short Period, and 2002 tax year; (3) M-1

adjustments totaling $12,549,214 claimed on the Stub Period and 2002 tax returns; and (4) a

write-off of the unamortized adjusted basis of an indefeasible right of use in the amount of

$6,823,750.  The Court disallowed an M-1 adjustment of $2,353,526 on the Stub Period return

and an M-1 adjustment of $12,467,028 on the 2002 tax return.  Additionally, based upon the

complete lack of testimonial or documentary evidence to support the 2003 tax return, the Court

disallowed the carryback of a net operating loss from the 2003 Tax Year (the "2003 NOL")[1].

Based upon the allowances and disallowances outlined in the Decision, the Trustee and

the IRS jointly submitted a proposed order, which was issued by the Court on April 28, 2011 (the

"Order").  The Order, among other relief, permitted the Trustee to recover a tax refund of

$3,806,512 and the overpayment of paid-in interest, plus statutory interest.

On May 12, 2011, the Trustee filed this motion to reconsider the Court's decision

disallowing the carry back of the 2003 NOL.  On June 15, 2011, the IRS filed its opposition to

the Trustee's motion, and a hearing on the motion was held on June 27, 2011.

<u>Legal Standard</u>

Bankruptcy Rule 9023, which incorporates Rule 59, provides that "[a] motion for a new

trial or to alter or amend a judgment shall be filed . . . no later than 14 days after entry of

judgment."  Fed. R. Bankr. P. 9023.  Pursuant to Rule 54(a), made applicable to this matter by

Bankruptcy Rules 7054 and 9014, the Order constitutes a "judgment" that may be reconsidered

under Rule 59 because it is an "order from which an appeal lies."  Fed. R. Civ. P. 54(a); Fed. R.

Bankr. P. 7054, 9014.

While Rule 59(e) does not provide specific grounds for amending a judgment, <u>see</u> Fed. R.

Civ. P. 59(e), courts have held that the grounds for reconsideration are "an intervening change of

controlling law, the availability of new evidence, or the need to correct a clear error or prevent

---

[1] While the parties' joint-pre trial order states that the amount of the 2003 NOL is $4,426,772, the 2003 tax return reflects that the correct amount of the 2003 NOL is $4,062,803, which is also the amount listed in the Trustee's post-trial memorandum of law.  (<u>Compare</u> JPTO at 2 ¶3, ECF No. 1261 <u>with</u> Exhibit I <u>and</u> Trustee's Post-Evidentiary Mem. of Law in Supp. at 4, ECF No. 1180.)

manifest injustice." <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992).  <u>See also</u> <u>D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.</u>, No. 09 Civ. 7840 (JGK), 2011 WL 3273208, at *2 (S.D.N.Y. Aug. 1, 2011); <u>Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.</u>, No. 11 Civ. 425 (SAS), 2011 WL 3516237, at *1 (S.D.N.Y. Aug. 10, 2011).  The purpose of Rule 59(e) is "'to mak[e] clear that the . . . court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." <u>White v. N.H. Dep't of Emp't Sec.</u>, 455 U.S. 445, 450 (1982) (alteration in original) (<u>quoting</u> Notes of Advisory Committee on 1946 Amendment to Rules, 28 U.S.C., at 491; 5 F.R.D. 433, 476 (1946)); <u>Greene v. Town of Blooming Grove</u>, 935 F.2d 507, 512 (2d Cir. 1991).  "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995).  A motion to reconsider should not be used "to relitigate an issue already decided." <u>Id.</u>

Discussion

The Trustee argues that reconsideration and allowance of the 2003 NOL is warranted for two reasons.  First, the Trustee argues that the Joint Pre-Trial Order (the "JPTO") did not raise an issue to be tried with respect to the 2003 NOL, or with respect to the bad debt deduction claimed on the 2003 tax return, and therefore the Court erred by disallowing the undisputed 2003 NOL.  Second, the Trustee argues that, even if the 2003 NOL was placed at issued in the JPTO, the Court erred when it did not give full evidentiary weight to the 2003 tax return to substantiate the 2003 NOL and bad debt deduction.  Both arguments are unpersuasive.

A.    <u>The JPTO Provided Notice that the IRS Contested the 2003 NOL.</u>

The Trustee argues that the IRS's only challenge to the 2003 NOL was contained in

Paragraph 8 of page 12 the JPTO, which states:

> The PT-1 entities have claimed a bad debt deduction of $5,470,721
> on the tax return for the 2003 tax year. The United States has not
> seen any evidence that these purported bad debts were ever
> included as income on any tax return. In the alternative, to the
> extent that they were included in income, they may have already
> been claimed as a deduction through an addition to a bad debt
> reserve or comparable account. In the alternative, the United
> States has not seen evidence that these purported bad debts are
> separate from the $18,306,258 of bad debts claimed on the 2002
> tax return. (That is, the United States contends that in the
> aggregate for years 2002 and 2003, the PT-1 entities may be
> attempting to deduct the same purported bad debts twice.)

(JPTO at 12 ¶ 8, ECF No. 1261 ("Paragraph 8").)

The Trustee contends that this language provides insufficient notice of the IRS's

objection to the bad debt deduction claimed by PT-1 in 2003. According to the Trustee, the

second sentence of Paragraph 8 is "nonsense prose" because the "premise of the statement, that

bad debts are income items, is plainly wrong," in that bad debts are expense items. (Trustee's

Mem. of Law in Supp. of Mot. for Partial Recons. at 3, ECF No. 1244-1.) The Trustee also

argues that the first alternative argument raised by the IRS in the third sentence of Paragraph 8 is

"equally absurd" from an accounting standpoint, and that "no proof could ever be brought to bear

on" the IRS's first two arguments. (<u>Id.</u> at 4, ECF No. 1244-1.) Lastly, the Trustee argues that

the IRS's second alternative argument, in the fourth sentence of Paragraph 8, alleges that the

Debtors are fraudulently seeking to claim a single deduction twice. The Trustee contends that

none of these arguments call into question whether the receivables giving rise to the bad debt

deduction were recorded as income, and that at no time did the IRS allege that the Debtors

underreported revenue.  The Trustee further contends that nothing in Paragraph 8 suggests that the amount of the bad debt deduction or the 2003 NOL was disputed.

The IRS concedes that Paragraph 8 was not the "most artful way of framing the issue for the 2003 year." (Tr.[2] 6/27/11 at 38.)  However, the IRS argues that this paragraph, read together with other provisions of the JPTO, sets forth the IRS's challenges to the 2003 NOL.  Paragraph 3 of the JPTO, in the section entitled "Relief Prayed," states that "[t]he United States prays that the Trustee's request for the tax refund be denied to the extent that the claimed net operating losses cannot be substantiated or to the extent that they are found not to exist." (JPTO at 2 ¶3, ECF No. 1261 ("Paragraph 3").)

The IRS argues that paragraph 9 and paragraph 4 of the JPTO also provide the Trustee with notice that the IRS disputed the amount and legitimacy of the 2003 bad debt deduction. Paragraph 9 states: "The United States has not seen sufficient evidence that the additional debts written off after the initial booking of the addition to the bad debt reserve were properly written off." (JPTO at 12 ¶ 9, ECF No. 1261 ("Paragraph 9").)  Paragraph 4 of the JPTO states, in pertinent part: "The Court may need to rule upon the proper basis of a deduction for a bad debt." (JPTO at 15 ¶4, ECF No. 1261 ("Paragraph 4").)

Given these provisions of the JPTO, the IRS contends that the Trustee was fully aware that the IRS disputed the amount of the bad debt deduction taken on the 2003 tax return and the validity of the 2003 NOL.  The IRS further contends that, to the extent the Trustee was confused about the IRS's position as set forth in the JPTO, the Trustee should have sought clarification prior to the trial.

Rule 16 of the Federal Rules of Civil Procedure, made applicable to this matter pursuant to Bankruptcy Rules 7016 and 9014, governs pretrial procedure, and provides that a pretrial

---

[2] "Tr." refers to the transcript of the hearing held on the date indicated.

order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d).

"[R]ule 16 was not intended to function as an inflexible straightjacket on the conduct of litigation or to produce an abstract, perfect equivalence between the pretrial papers and the course of litigation; instead, it was intended to insure the efficient resolution of cases and, most importantly, minimize prejudicial surprise." Lamborn v. Dittmer, 873 F.2d 522, 527 (2d Cir. 1989). In light of this purpose, pretrial orders are to be "liberally construed." Id.

The JPTO provided adequate notice to the Trustee that the 2003 NOL was disputed. Although the issue framed by the IRS in the second sentence of Paragraph 8 is inartfully phrased, because, as the Trustee points out, bad debts are not income items, the meaning of Paragraph 8 is clear: the IRS is questioning whether the receivables giving rise to the bad debts claimed as deductions in 2003 were included in income. The wording of this issue is identical to the wording of the issues raised by the IRS in paragraph 6 of the JPTO with respect to the bad debt deduction claimed on the 2002 tax return, and in paragraph 7 with respect to the bad debt deduction claimed on the Stub Period tax return.[3] The Trustee does not maintain that he did not understand the IRS's contentions outlined in paragraphs 6 and 7 to constitute challenges to the validity of the bad debt deductions for the Stub Period and for the 2002 tax year. If the Trustee were genuinely confused by the IRS's arguments, he could have sought clarification prior to the evidentiary hearing, which he did not.

Moreover, on this motion it is irrelevant whether the second sentence in Paragraph 8 provided adequate notice that the IRS disputed that the receivables giving rise to the bad debt deduction on the 2003 tax return were included in income. The 2003 NOL was not disallowed

---

[3] Paragraph 6 provides, in pertinent part: "The United States contends that the Trustee has not shown that the full amounts that were allegedly written off as bad debts for the tax year ended December 31, 2002 were ever included in income." (JPTO at 11 ¶ 6, ECF No. 1261.) Paragraph 7 provides, in pertinent part: "The United States has not seen any evidence that these purported bad debts [claimed on the Stub Period tax return] were ever included in income." (JPTO at 11 ¶ 7, ECF No. 1261.)

on the basis that the Trustee failed to establish that the receivables giving rise to the bad debts claimed as a deduction were included in income; rather, the 2003 NOL was disallowed because the Trustee failed to provide evidence to substantiate the claimed 2003 bad debt deduction and 2003 NOL.  (Decision at 42, ECF No. 1231.)  The IRS's challenge to the 2003 NOL was clearly articulated in the JPTO: Paragraph 3 of the JPTO states that the IRS sought the denial of the Trustee's request for the tax refund "to the extent that the claimed net operating losses cannot be substantiated."  (JPTO at 2 ¶ 3, ECF No. 1261.)

It is evident that the Trustee was aware of the IRS's challenge to the 2003 bad debt deduction.  For example, the Trustee did not object when the IRS questioned Adam Kolodny, the Debtors' former chief operating officer, regarding the calculation of the 2003 bad debt deduction.  (Tr. 7/9/11 at 103.)  Moreover, the Trustee's post-trial submissions make it clear that he understood, at least at that point, that the IRS disputed the 2003 bad debt deduction.  The Trustee noted in post-trial briefing that the IRS contended that credible evidence was not introduced to support the bad debt deductions giving rise to the net operating losses or that each bad debt should be matched to a particular receivable, and argued, in response, that the evidence adduced at trial supported the 2003 NOL (See Trustee's Post-Evidentiary Mem. of Law in Supp. at 2, 26-27, ECF No. 1180; Trustee's Supp. Post-Hearing Mem. of Law in Supp. at 2, ECF No. 1191).  If the Trustee believed that the 2003 bad debt deduction and 2003 NOL had not been placed at issue by the IRS in the JPTO, it was incumbent upon him to make the argument at that time.  Instead, he waited until this issue, which he now contends was not properly before the Court, was decided, and raised the objection for the first time in a motion for reconsideration. This is an impermissible use of Rule 59.  "[A] motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments

that could have been previously advanced." <u>Associated Press v. U.S. Dep't of Def.</u>, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (citations omitted).

For these reasons, it was neither manifestly unjust nor unfairly prejudicial to disallow the 2003 NOL on the basis that the Trustee failed to substantiate the 2003 bad debt deduction, and therefore, reconsideration on this basis is unwarranted.

B.    <u>The 2003 Tax Return Does Not Constitute Credible Evidence to Support the 2003 NOL.</u>

The Trustee argues that the Court erred by failing to conclude that the 2003 tax return, which was received in evidence without objection, constituted credible evidence to substantiate the 2003 NOL.  The Trustee's argument must be rejected.

It is well established that the taxpayer bears the burden of proof in an action to obtain a tax refund.  <u>United States v. Janis</u>, 428 U.S. 433, 440 (1976).  This burden of proof is not altered when the taxpayer files for bankruptcy relief.  <u>Raleigh v. Ill. Dep't of Revenue</u>, 530 U.S. 15, 20 (2000) (the burden of proof on a state tax claim remained on the taxpayer).  In <u>Raleigh</u>, the Court explained:

> Congress of course may do what it likes with entitlements in bankruptcy, but there is no sign that Congress meant to alter the burdens of production and persuasion on tax claims. The Code in several places, to be sure, establishes particular burdens of proof. <u>See, e.g.</u>, 11 U.S.C. § 362(g) (relief from automatic stay), § 363[p] (adequate protection for creditors), § 364(d)(2) (same), § 547(g) (avoidability of preferential transfer), § 1129(d) (confirmation of plan for purpose of avoiding taxes). But the Code makes no provision for altering the burden on a tax claim, and its silence says that no change was intended.

<u>Id.</u> at 21-22.

The burden on a tax refund claim may shift to the IRS under 26 U.S.C. § 7491(a), which provides:

> Burden shifts where taxpayer produces credible evidence.--
>
> (1) General rule.--If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.
>
> (2) Limitations.--Paragraph (1) shall apply with respect to an issue only if--
>
>> (A) the taxpayer has complied with the requirements under this title to substantiate any item;
>> (B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; and
>> (C) in the case of a partnership, corporation, or trust, the taxpayer is described in section 7430(c)(4)(A)(ii).

26 U.S.C. § 7491(a).

Although "credible evidence" is not defined in the statute, the legislative history states:

> Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). A taxpayer has not produced credible evidence for these purposes if the taxpayer merely makes implausible factual assertions, frivolous claims, or tax protestor-type arguments. The introduction of evidence will not meet this standard if the court is not convinced that it is worthy of belief. If after evidence from both sides, the court believes that the evidence is equally balanced, the court shall find that the Secretary has not sustained his burden of proof.

H.R. Rep. No. 105-599, at 205 (1998), reprinted in 1998 U.S.C.C.A.N. 288.

The Trustee argues that the 2003 tax return constituted "credible evidence" sufficient to shift the burden of proof to the IRS with respect to the 2003 NOL.  Given that the IRS introduced

no evidence on this point, the Trustee contends that the disallowance of the 2003 NOL was error. The Trustee distinguishes <u>Zeeman v. United States</u>, 275 F. Supp. 235 (S.D.N.Y. 1967), cited at page 42 of the Decision.

The Trustee is correct that <u>Zeeman</u> discussed the admissibility of a tax return, and that in this case, the 2003 tax return was admitted into evidence without objection. <u>Zeeman</u> is also distinguishable because it was issued prior to the enactment of 26 U.S.C. § 7491 in 1998. However, this does not alter the conclusion that the 2003 tax return, by itself, does not constitute credible evidence to substantiate the 2003 NOL. In <u>United States v. Official Committee of Unsecured Creditors (In re Industrial Commercial Electrical, Inc., et al.)</u>, 319 B.R. 35, 54 (D. Mass. 2005), the court directly addressed this issue, holding that a tax return, without more, does not constitute "credible evidence" to shift the burden to the IRS under § 7491. <u>Indus. Commercial</u>, 319 B.R. at 54-55.

The Trustee contends that the holding in <u>Industrial Commercial</u> is incorrect, and argues that a tax return should be evaluated on a case by case basis to determine whether it constitutes credible evidence within the meaning of § 7491. (Tr. 6/27/11 at 23.) The Trustee submits that the 2003 tax return, "with the substantial exhibits that were attached to it, the balance sheet, the income statement, all the various schedules," constituted credible evidence to substantiate the 2003 NOL. (Tr. 6/27/11 at 11.)

The Trustee's argument that a tax return, without more, may constitute credible evidence sufficient to shift the burden of proof under 26 U.S.C. § 7491(a), is undercut by the statute's legislative history, which provides, in pertinent part:

> Nothing in the provision shall be construed to override any requirement under the [Internal Revenue] Code or regulations to substantiate any item. Accordingly, taxpayers must meet applicable substantiation requirements, whether generally imposed

> or imposed with respect to specific items, such as charitable contributions or meals, entertainment, travel, and certain other expenses. Substantiation requirements include any requirement of the [Internal Revenue] Code or regulations that the taxpayer establish an item to the satisfaction of the Secretary. Taxpayers who fail to substantiate any item in accordance with the legal requirement of substantiation will not have satisfied the legal conditions that are prerequisite to claiming the item on the taxpayer's tax return and will accordingly be unable to avail themselves of this provision regarding the burden of proof. Thus, if a taxpayer required to substantiate an item fails to do so in the manner required (or destroys the substantiation), this burden of proof provision is inapplicable.

H.R. Rep. No. 105-599, at 204, 205 (footnotes omitted).  Taxpayers are required maintain sufficient records to substantiate all deductions on their tax returns.  26 U.S.C. § 6001; 26 C.F.R. §1.6001-1(a) (Taxpayers "shall keep such permanent books of account or records . . . as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information.")

Moreover, many courts have rejected taxpayers' refund claims on the basis that no evidence was introduced to substantiate the claimed deductions, other than the tax returns and schedules, or on the basis that insufficient additional evidence was introduced.  See, e.g., Adler v. Comm'r, No. 10-4425, 2011 WL 3796655, at *2-3 (3d. Cir. Aug. 29, 2011) (taxpayer failed to produce credible evidence to substantiate business loss deduction and dependency credit); Akers v. Comm'r, 326 F. App'x 593 (2d Cir. 2009) (taxpayer failed to substantiate deductions); Lenihan v. Comm'r, 296 Fed. App'x 160 (2d Cir. 2008) (taxpayer did not substantiate deductions); Blodgett v. Comm'r, 394 F.3d 1030, 1036 (8th Cir. 2005) (taxpayer did not produce proper records to substantiate net operating loss); Toberman v. Comm'r, 294 F.3d 985, 990 (8th Cir. 2002) (individual taxpayer's tax returns, relevant wholly owned Subchapter S corporations' tax returns, and accountant's testimony were insufficient to support individual's claimed net

operating losses); <u>Tilman v. United States</u>, 644 F. Supp. 2d 391 (S.D.N.Y. 2009) (taxpayers

failed to substantiate amount of deductible expenses); <u>Robinson v. Comm'r</u>, 101 T.C.M. (CCH)

1473 (2011) (same); <u>Hoopengarner v. Comm'r</u>, 86 T.C.M. (CCH) 723, 2003 WL 22962501, at

*4-5 (2003) (taxpayers' tax returns and testimony did not substantiate claimed net operating

losses, and taxpayers "failed to provide any financial documentation to support the net operating

losses"); <u>Schaefer v. Comm'r</u>, 75 T.C.M. (CCH) 2232, 1998 WL 217891, at *6, <u>aff'd</u>, 188 F.3d

514 (9th Cir. 1999) (taxpayer's tax returns were insufficient to establish amount of rental

expenses).

For example, in <u>Toberman</u>, a taxpayer challenged the IRS's deficiency determination,

arguing that he was entitled to carry forward net operating losses incurred by his wholly owned

Subchapter S corporations for the tax years 1986 through 1991. <u>Toberman</u>, 294 F.3d at 986. In

support of his claim, the taxpayer introduced his individual tax returns from the years 1986

through 1992, as well as some of the relevant corporate tax returns showing the origin of part of

the losses. <u>Id.</u> at 987, 990. The taxpayer's accountant also testified on his behalf. <u>Id.</u> at 987-88,

990. The tax court ruled that the taxpayer did not meet his burden of proof with respect to the

net operating losses. <u>Id.</u> The Eighth Circuit affirmed, given "the lack of tax returns for the

Subchapter S corporations for all of the relevant years, *in addition to the complete absence of*

*underlying record evidence*." <u>Id.</u> at 990 (emphasis added). The court also noted that it was

within the tax court's "discretion not to credit the testimony of taxpayer and his accountant." <u>Id.</u>

("The trial court is not required to accept even uncontradicted testimony." (<u>citing</u> <u>Askew v.</u>

<u>Comm'r</u>, 805 F.2d 830, 832 (8th Cir. 1986))).

Even if a tax return may constitute credible evidence to shift the burden to the IRS under

§ 7491, PT-1's 2003 tax return does not satisfy that standard. The credibility of the 2003 tax

return is called into question by the evidentiary record in this case.  At trial, the Trustee fell short of substantiating the bad debt deductions claimed in the Stub Period and 2002 tax returns. (Decision at 21, ECF No. 1231.)  The Trustee acknowledged that there was no documentary evidence, other than the tax return, to support the full amount claimed as a bad debt deduction for the Stub Period, and stated that he was willing to accept the lesser amount reflected on Exhibit V, which was a document prepared by the Debtors in response to the IRS's Informational Document Request No. 5 providing a month by month summary of PT-1 Long Distance's net accepted revenue, bad debt reserves, chargebacks, and true-ups for the years 1998 through 2002. (Decision at 16, 22, ECF No. 1231; Tr. 3/25/10 at 11-12, 14; Tr. 8/26/09 at 148; JPTO, Ex. B, ECF No. 1261.)  The Trustee also conceded that he could not reconcile the $367,465.34 difference between Exhibit V and Exhibit 10, which is an excerpt from the Debtors' general ledger, relating to the 2002 bad debt deduction.  (Decision at 37, ECF No. 1231; Tr. 3/25/10 at 73, 75.)  For those reasons, $1,430,795.58 of the bad debt deduction claimed in the Stub Period was disallowed, as was $367,465.34 of the bad debt deduction claimed on the 2002 tax return. (Decision at 21-22, 37, ECF No. 1231.)  Similarly, the Trustee was unable to support an M-1 deduction of the $2,353,526 for bad debts incurred by PT-1 Long Distance claimed in the Stub Period, as well as an M-1 deduction of $13,147,829 for bad debts claimed in the 2002 tax return. (Decision at 31-32, 39-42, ECF No. 1231.)

Additionally, Rosalind Gaffney, the Debtors' former director of taxes, admitted that the Stub Period tax return contained errors in the annexed schedules.  (Tr. 8/26/09 at 140, 177-79.) Given the Trustee's failure to provide evidence to substantiate the full amount of the bad debt deductions claimed in prior years' returns, and the acknowledged errors in those returns, it was

appropriate to conclude that the 2003 tax return and annexed schedules, without more, does not constitute credible evidence with respect to the bad debt deduction claimed therein.

The Trustee argues that this Court "over simplifi[ed] . . . the relation of bad debts to NOL," and explains that the "[b]ad debt expense constitutes one of the innumerable items which go into determining whether a taxpayer had taxable income or an operating loss." (Trustee's Mem. of Law in Supp. of Mot. for Partial Recons. at 9, ECF No. 1244-1) The Trustee further argues that the Court effectively "reject[ed] the entire 2003 tax return" by disallowing the 2003 NOL, even though no other item on the return was contested. (Id. at 9.)

The 2003 NOL was properly disallowed based upon the lack of substantiation of the bad debt deduction. The total bad debt deduction claimed on the 2003 tax return was $5,470,721. The 2003 NOL, as claimed on the 2003 tax return, was $4,062,803, and as listed in the JPTO was $4,426,772. Therefore, even assuming all of the other items on the 2003 tax return are correct, because the bad debt deduction is greater than the claimed 2003 NOL, upon the disallowance of the bad debt deduction, there is no net operating loss for the 2003 tax year. As the IRS stated, "[t]hat is just the way the math works for that year." (IRS Brief in Opp'n to Trustee's Mot. for Partial Recons. at 19, ECF No. 1252.)

For all these reasons, there is no basis to reconsider the disallowance of the 2003 NOL.

<u>Conclusion</u>

For the foregoing reasons, the Trustee's motion for partial reconsideration is denied. A separate order will issue.



Dated: Brooklyn, New York
September 28, 2011

_____
**Carla E. Craig**
**United States Bankruptcy Judge**